NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0304n.06
Filed: April 27, 2009

No. 06-4431

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHELLE M. HENDRICKS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OFFICE OF THE CLERMONT COUNTY | ) | SOUTHERN DISTRICT OF OHIO |
| SHERIFF, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: BOGGS, Chief Judge; MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. A jury ruled against the Office of the Clermont County Sheriff ("the Office") and Christopher Willis on claims of retaliation brought by Michelle Hendricks. The Office and Willis challenge these judgments and several rulings by the district court. We affirm.

I.

Hendricks, a former employee of the Clermont County Sheriff, filed a complaint against the Office and three of its employees (individually and in their official capacities) in August 2003. Before the case proceeded to trial, the defendants filed a motion for summary judgment. While the district court rejected several of Hendricks' claims as a matter of law, it allowed other claims—including sexual harassment, retaliatory discharge and harassment for opposing an unlawful

No. 06-4431
*Hendricks v. Office of the Clermont County Sheriff*

practice—to proceed to trial.

As relevant here, the jury found against the Office on the retaliatory-discharge claim, and against Willis on a separate retaliation claim. The district court denied the defendants' post-verdict motion to dismiss, for judgment as a matter of law and for leave to alter or amend the judgment.

II.

In challenging this verdict, the Office first argues that, because Hendricks' complaint "does not identify the Office of the Clermont County Sheriff as a defendant" or "describe any actions it may have taken against her," Br. at 14, the district court lacked personal jurisdiction over the Office or at a minimum failed to state a claim against the Office. But the Office forfeited this argument by not raising the point until after the jury had entered its verdict. *See* Fed. R. Civ. P. 12(b); *id.* 12(h); *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550 (6th Cir. 1995); *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 610–11 (6th Cir. 1995). The argument, at any rate, has no merit to boot: The complaint names the Office of the Clermont County Sheriff as a defendant in the caption; it says that Hendricks was employed by "Defendant Clermont County Sheriff" and elsewhere it appears to distinguish that defendant from "Defendant Albert J. Rodenberg," who was the Clermont County Sheriff, Complaint at 2; and it alleges in each of the four claims at issue here that the violations were committed by the "Defendants," *id.* at 2–6, a phrase that plainly covers the Office. More, when Hendricks wished to draw distinctions among the defendants by raising claims against

some of them, rather than all of them, she showed her capacity to do so. *Cf. id.* at 7–8 (alleging violations by "Defendant McConnell" and "Defendant Rodenberg" in two claims).

III.

The Office separately argues that, because it is not "sui juris"—because, that is, it is not a separate legal entity but is "no more than [an] arm[] of the [county] government," *McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003)—the district court should have granted its post-verdict motion to dismiss the claims against it as a matter of law. In addressing this issue, the district court ruled—correctly, it appears, though we need not decide the point—that the Office is not an independent legal entity and therefore is incapable of suing or being sued, but it then held that the Office forfeited the issue by failing to raise it until after the jury had entered its verdict.

Rule 9(a) of the Federal Rules of Civil Procedure says that a party must raise an opponent's "capacity to sue or be sued . . . by a *specific denial*, which must state any supporting facts that are peculiarly within the party's knowledge" (emphasis added). The featured phrase by itself suggests that a party must raise lack of capacity in the answer or at least before trial. Common sense points in the same direction: Only a set of civil rules designed to lay traps for the wary and unwary alike would allow a defendant to save outcome-dispositive defenses until it has been given a trial run of its other defenses to the claims during the case in chief.

Oddly enough, it appears (or at least the parties' briefs make it appear) that we have not addressed this issue in a published opinion. We have, however, rejected a party's efforts to raise lack

of capacity after a trial in an unpublished opinion, one that we find persuasive here. *See Tri-Med Fin. Co. v. Nat'l Century Fin. Enters., Inc.*, Nos. 98-3617 & 99-3062, 2000 WL 282445, at *5 (6th Cir. Mar. 6, 2000) ("[P]roper enforcement of the rule requires early waiver of the right to object to capacity."). Every court that has addressed the issue (to our knowledge) has held that a party who does not raise the lack-of-capacity defense before trial forfeits it after trial. *See, e.g.*, *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345–46 (7th Cir. 1991); *MTO Mar. Transp. Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir. 1988); *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49 (9th Cir. 1972); *see also* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1559 (2d ed. 1990) ("A party who wishes to raise an issue as to capacity must do so by specific negative averment, and since it is a threshold defense, somewhat analogous to lack of personal jurisdiction or improper venue, it should be considered as waived under Rule 12(h)(1) if not raised by a preliminary motion before trial.").

Some courts, we realize, have held that the absence of capacity of one of the parties may destroy the diversity of the parties and thus destroy the diversity jurisdiction of the court, which may well implicate a non-forfeitable defense. *See, e.g.*, *Clemente Eng'g Co. v. DeLiso Constr. Co.*, 53 F. Supp. 434, 435 (D. Conn. 1944). But the Office makes no such allegation here. It instead contends that lack of capacity is *always* a jurisdictional issue, an idea we rejected in *Brown v. Keller*, 274 F.2d 779, 780 (6th Cir. 1960). To the extent the Office means to make a more nuanced argument—that the lack of capacity of governmental bodies is not forfeitable because the defense implicates sovereign immunity—that gets it nowhere. Sovereign immunity also is a forfeitable

defense. *See Wisc. Dept. of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense."); *see also Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474–76 (6th Cir. 2006).

IV.

The Office separately contends that the jury verdict was inconsistent, in that it found for Willis and Rodenberg on the retaliatory-discharge claim and against the Office on the same claim, even though the Office acts through these same employees. But it forfeited this argument as well by failing to raise it before the jury was discharged. *See Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618–19 (6th Cir. 2007); Fed. R. Civ. P. 49(b). The issue also was squarely in front of the parties at the time the jury interrogatories were approved. Indeed, it was the phrasing of the jury interrogatories that created the alleged problem—by permitting the jury to rule against the Office and for Willis and Rodenberg on the retaliatory-discharge claim. Having said nothing about the oddity of permitting a governmental entity (the Office) to be found liable for acts that only could have been committed by individuals (Willis or Rodenberg) at the time the parties approved the jury interrogatories, the Office is in no position to blame the district court for giving the jury this option.

V.

Willis, lastly, challenges the denial of his post-trial motion for judgment as a matter of law on the retaliation claim. *See* Fed. R. Civ. P. 50(b). We give fresh review to the issue, *Bowman v.*

*Corr. Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003), construing the evidence in the light most favorable to the non-moving party and upholding the jury verdict unless reasonable minds could come to just one conclusion—the opposite conclusion—on the issue, *Hall v. Consol. Freightways Corp. of Del.*, 337 F.3d 669, 672 (6th Cir. 2003).

The elements of a retaliation claim are these: "(1) [T]he plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The relevant facts are these: Willis called Hendricks to the Sherriff's Office for questioning. Before he or any other officer attempted to question her, Willis showed her a letter recommending that she be discharged and outlining several reasons why. A different officer read Hendricks her *Miranda* rights, after which she declined to answer any questions without an attorney present. Later that day, a new letter from Willis arrived at Hendricks' home, which included an additional complaint—her "failure to cooperate with a criminal investigation." ROA 923.

Willis does not deny that Hendricks had a constitutionally protected right to refuse to answer questions. And he does not deny that Hendricks was subjected to an adverse employment action: a discharge. He instead denies responsibility for the firing, noting that he only recommended that she be discharged and that he had planned to make the same recommendation before she exercised her *Miranda* rights. Put another way, Willis argues that Hendricks was not fired *because of* her

- 6 -

protected conduct.

Maybe Willis is right about the answer to this causation question; maybe he is not. But the facts are not so one-sided that the jury was precluded from deciding it. A jury could fairly find that the Willis recommendation, even if Willis would have made it without regard to Hendricks' invocation of her *Miranda* rights, became more forceful when Willis added a new justification—that Hendricks refused to cooperate with the investigation. Difficult causation questions like this one are eminently appropriate for finders of fact to resolve, and the district court did not err in permitting the jury to decide this one.

VI.

For these reasons, we affirm.